**In re WALLING.**

Court of Claims of Ohio,
Victims of Crime Division.

No. V94–22399.

Decided Sept. 17, 1997.

*George Mineff, Jr.,* for the applicant.

*Betty D. Montgomery,* Attorney General, for the state.

RUSSELL LEACH, Judge.

This matter came on to be considered upon the Attorney General's appeal from the May 30, 1997 order issued by the panel of commissioners. The panel's determination affirmed the decision of the single commissioner, which found that applicant Donald J. Walling had proven the existence of criminally injurious conduct and referred the claim to the Attorney General concerning economic loss.

■ R.C. 2743.52(A) places the burden of proof on an applicant to satisfy the Court of Claims commissioners that the requirements for an award have been met by a preponderance of the evidence. *In re Rios* (1983), 8 Ohio Misc.2d 4, 8 OBR 63, 455 N.E.2d 1374. The panel found, upon review of the evidence, that applicant presented sufficient evidence to meet his burden of proving that he was a victim of criminally injurious conduct.

The standard for reviewing claims appealed to the court is established by R.C. 2743.61, which provides, in pertinent part, the following:

"If upon hearing and consideration of the record and evidence, the court decides that the decision of the commissioners appealed from is reasonable and unlawful, it shall affirm the same, but if the court decides that the decision of the commissioners is unreasonable or unlawful, the court shall reverse and vacate the decision or modify it and enter judgment thereon."

■ Upon review of the file in this matter, the court finds that the panel of commissioners was not arbitrary in finding that applicant did show by a preponderance of the evidence that he was a victim of criminally injurious conduct.

The issue of whether a police officer injured in the line of duty qualifies as a victim of criminally injurious conduct involves, to some extent, a factual determination by the panel of commissioners. Accordingly, the court will not substitute its judgment for that of the trier of fact.

Based on the evidence and R.C. 2743.61, it is the court's opinion that the decision of the panel of commissioners was reasonable and lawful. Therefore, this court affirms the decision of the three-commissioner panel, and hereby refers applicant's claim to the Attorney General for further investigation and a new recommendation. The single commissioner shall subsequently determine the claim.

Upon review of the evidence, the court finds that the order of the panel of commissioners must be affirmed and the Attorney General's appeal must be denied.

IT IS HEREBY ORDERED THAT:

1. The order of May 30, 1997 is approved, affirmed, and adopted. See Appendix;

2. This claim is REFERRED to the Attorney General for further investigation and a new finding of fact and recommendation and REMANDED to the single commissioner for further determination;

3. The Attorney General shall file its amended finding of fact and recommendation on or before October 17, 1997;

4. Applicant may respond to the new finding of fact and recommendation within twenty-one days after it is filed by the Attorney General;

5. Costs assumed by the reparations fund.

*Judgment accordingly.*

RUSSELL LEACH, J., retired, of the Franklin County Municipal Court, sitting by assignment.

## APPENDIX

### Decided May 30, 1997

OPINION AND ORDER OF THREE-COMMISSIONER PANEL.

This appeal came to be heard before this panel of three commissioners on July 24, 1996 upon the Attorney General's April 3, 1996 objection to the March 11, 1996 decision of the single commissioner.

The single commissioner declined to adopt the Attorney General's recommendation to deny this claim, and found that the applicant qualified as a victim of criminally injurious conduct. The single commissioner then referred the claim to the Attorney General for further investigation concerning a pre-existing medical condition and the economic loss attributable to the criminally injurious conduct.

The Attorney General and the applicant's counsel attended the hearing and presented oral argument for this panel's consideration.

From review of the file and with full consideration given to the oral argument presented at the hearing, this panel makes the following determination.

R.C. 2743.51(L) defines a "victim" as follows:

" 'Victim' means a person who suffers personal injury or death as a result of any of the following:

"(1) Criminally injurious conduct;

"(2) The good faith effort of any person to prevent criminally injurious conduct;

"(3) The good faith effort of any person to apprehend a person suspected of engaging in criminally injurious conduct."

R.C. 2743.51(C) defines "criminally injurious conduct" as follows:

" 'Criminally injurious conduct' means * * * any conduct that occurs or is attempted in this state; poses a substantial threat of personal injury or death; and is punishable by fine, imprisonment, or death * * *."

The applicant is a police officer for the city of North Olmsted, Ohio. This claim was filed as a result of injuries sustained by the applicant while chasing an alleged offender who had been pulled over on a routine traffic violation. The applicant slipped and fell during the chase, causing injury to his right heel and ankle.

The Attorney General maintains that the applicant does not qualify as a victim of criminally injurious conduct because he was not injured while making a good faith effort to prevent, or apprehend, a person suspected of engaging in criminally injurious conduct, as required under R.C. 2743.51(L)(2) and (3). It is the Attorney General's position that routine traffic violations do not rise to the level of criminally injurious conduct contemplated by the statute, or case law, because such offenses do not pose a substantial risk of personal injury or death.

The majority of this panel finds that the single commissioner properly addressed the issues and interpreted the law in this case. We agree with the single commissioner's finding that, once the alleged offender exited his vehicle and fled

the police officer, a substantial risk of personal injury or death arose. Although the Attorney General maintains that we must evaluate this case on the basis of the actual occurrence and its outcome, we find this argument to be without merit. The panel recognizes that, in this case, the underlying traffic offense did not pose any risk of harm to the applicant or others. Moreover, it was ultimately determined that the alleged offender fled the officer solely as a result of fear; he was not armed and had not been involved in any other, more serious, offenses. However, that type of information is not known by police officers at the point that a chase is undertaken. The act of fleeing a police officer is a separate matter, which is criminally punishable in and of itself, and creates a new and different level of risk than the events that preceded it.

In reaching this decision, the majority acknowledges that in previous cases involving police officers, we have taken a strong position against the finding of criminally injurious conduct. For example, in *In re May* (Feb. 29, 1996), Ct. of Cl. No. V94–43540tc, unreported, affirmed jud. (May 10, 1996), we stated:

"Were this panel to find the applicant qualifies as a victim in the present claim, we would, in effect, render the reparations fund as a form of occupational hazard insurance. The applicant was injured in the line of duty while preparing to execute a search warrant, but his injury occurred before he ever entered the subject residence that was to be searched or encountered the suspected offenders inside the residence. * * * If criminally injurious conduct was the cause of Officer May's slip and fall, then every police officer would be eligible for reparations every time he responds to a call or executes a warrant, without regard to the application of traditional proximate cause standards."

The *May* case also relies on the following statement from Commissioner Hewitt's dissent in *In re Coss* (Sept. 22, 1993), Ct. of Cl. No. V91–83524tc, unreported: "The Victims of Crime Act was never intended as a police and fire fighters occupational hazard insurance fund or as a supplement to workers' compensation." The dissent objected to the majority's finding that an arson investigator qualified as a victim of criminally injurious conduct, even though the investigator had never come in contact with the fire, and the crime of arson had already been completed when he arrived on scene.

Additionally, in *In re Kallay* (July 31, 1996), Ct. of Cl. No. V94–75433tc, unreported, reversed in (1997), 91 Ohio Misc.2d 148, 698 N.E.2d 132, Commissioner Hewitt again dissented from a majority's decision finding that a police officer qualified as a victim of criminally injurious conduct. The determination in *In re May* and the dissenting opinion in *In re Coss* formed the basis of the dissent.

In *Kallay,* as in the *May* case, the officer was attempting to serve an arrest warrant, but never came into contact with the criminal suspect. On February 4, 1997, the majority's determination in *Kallay* was reversed by a judge of this court. The judge reviewed the cases of *May* and *Coss* and found the determination in *May* to be controlling. The court stated:

"The injury sustained by the applicant was not the result of any criminally injurious conduct, any attempt to prevent criminally injurious conduct, or as a result of a good faith effort to apprehend a person engaging in criminally injurious conduct. The injuries sustained by the applicant were simply the result of an intervening act of the applicant stepping in a hole and twisting his ankle.

"Accordingly, the court finds that the applicant was not a victim of criminally injurious conduct." 91 Ohio Misc.2d at 150, 698 N.E.2d at 134.

In this case, the majority has not deviated from its previous findings in *May, Coss,* and *Kallay.* Rather, we find that this case is distinguished by the fact that an actual suspect was present and that the applicant was in pursuit of that suspect when the injury occurred. Consequently, the criminally injurious conduct of fleeing from police was the proximate cause of the applicant's injuries, with no intervening act to break the chain of causation. Therefore, with the foregoing comments, the single commissioner's findings of fact and conclusions of law shall be adopted as our own. The March 11, 1996 decision of the single commissioner shall be affirmed, and the Attorney General's objection shall be overruled.

Inasmuch as the Attorney General never completed economic loss calculations, and issues regarding the applicant's pre-existing medical condition existed at the time of the single commissioner's determination, this file will be remanded to the single commissioner and referred to the Attorney General for further investigation and a new finding of fact and recommendation.

*Judgment accordingly.*

JAMES H. HEWITT III and KARL H. SCHNEIDER, Commissioners, concur.

PHILLIP E. PARISI, Commissioner, concurring separately.

I concur with the result reached by the majority; however, I would simply affirm the single commissioner without additional comment.